UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE ENGELMAYER

----------------------------------------------------------------- x

FORREST SOLUTIONS, INC.,                         :

         *Plaintiff,*                      :

         - against -                        :

KATE POST                                        :

         *Defendant*                       :

----------------------------------------------------------------- x

# 12 CIV 1239

**COMPLAINT**

Plaintiff Forrest Solutions, Inc. ("Forrest" or "Plaintiff"), by its attorneys Hartman &

Helpern Syracuse & Hirschtritt LLP, and as for their Complaint, respectfully allege as follows:

## NATURE OF THIS ACTION

1.     This is an action to recover the damages Forrest suffered as a result of the tortious

acts and breaches of fiduciary duty that Kate Post, a Forrest employee, committed during and

after Forrest's contract negotiations to provide concierge and exterior security services for a

residential high-rise cooperative apartment building.  As set forth herein, Forrest negotiated a

finalized services contract, but before the contract was executed, Kate Post, on information and

belief, through breaches of her fiduciary duty to Forrest, intentional interference with Forrest's

prospective contractual relationship, and misappropriation and unfair competition in violation of

New York law, damaged Forrest and deprived it of the benefits of its negotiations and

agreements.

## THE PARTIES

2.     At all relevant times herein, Plaintiff Forrest was and is a New York corporation,

and its principal place of business is 19 West 44th Street, 9th Floor, New York, NY 10036.

3.     On information and belief, at all relevant times, Defendant Kate Post was and is

an individual domiciled at 25 Hudson Street, Jersey City, New Jersey, 07302.

## JURISDICTION AND VENUE

4.     On information and belief, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

5.     This Court has personal jurisdiction over Defendant Kate Post pursuant to N.Y. CPLR 301 and 302, in that on information and belief, Kate Post breached of her fiduciary duty to Forrest, intentionally interfered with Forrest's prospective contractual relationships, and misappropriated from and unfairly competed with Forrest in violation of New York law within New York State.

6.     The basis for venue designated is that a substantial part of the events on which the claims are based occurred locally, including in the New York office of Forrest, which is 19 West 44th Street, New York, New York.

## ACTUAL CASE OR CONTROVERSY

7.     This action presents an actual case or controversy that is ripe for adjudication because an actual controversy exists between Forrest on one side, and Kate Post on the other side, as to whether Kate Post breached her fiduciary duty to Forrest, intentionally interfered with Forrest's prospective contractual relationships, and misappropriated from and unfairly competed with Forrest.

8.     On information and belief, Kate Post became employed by Forrest's predecessor in approximately February, 1992.

9.     On information and belief, "Kate [Post] has over 34 years of experience in the staffing and outsourcing industry where she began with Dartmouth Consultants as a partner in

professional direct hire placement. After 14 years at Dartmouth, Kate [Post] joined [Plaintiff] Forrest Solutions where she had an impressive 20 year career serving as Vice President of both the direct hire and the temporary group's business lines, setting up and running the operations department of outsourcing, and then in developing and growing the outsourcing practice. As the company grew and expanded, Kate [Post] became a partner and the COO, effectively running the firm on a daily basis." *See*, excerpt from the website ateamconsulting.com, annexed hereto as Exhibit A.

10.     Starting in or about June, 2011, Forrest began negotiations with The Versailles Apartment Corp., a New Jersey business corporation ("Versailles"), to provide concierge and exterior security services for a residential high-rise cooperative apartment building located at 6600 Boulevard East, West New York, New Jersey (the "Premises").

11.     On information and belief, the Premises are owned, governed, administered, and managed by Versailles, and the Managing Agent for Versailles is the Wentworth Property Management Corp. ("Wentworth").

12.     Wentworth, together with the board of the Versailles, and Forrest negotiated the terms of a services agreement for the Versailles for several months. During these negotiations, Wentworth and the board of the Versailles met with Forrest several times in Forrest's New York office. Kate Post led the negotiations, and was personally present at all of the meetings between Forrest, Wentworth, and the board of the Versailles in Forrest's New York office.

13.     By email dated August 22, 2011, Samantha Wielkocz, the Community Manager for Wentworth, informed Kate Post and Jim Caton, Forrest's President & a co-owner, that "[t]he [Versailles] Board has chosen to move forward with [Forrest]. . . . As you know, we are still discussing the date of implementation." The August 22, 2011 email attached a draft Concierge /

3

Exterior Security Services Agreement drafted by Versailles' legal counsel, and Ms. Wielkocz's email instructed Forrest to "mark it up as you see fit." A copy of the August 22, 2011 Email, without attachment, is part of an email chain annexed hereto as Exhibit B.

14.     Jim Caton replied to the August 22, 2011 email, stating "Hi Samantha. This is excellent news and thank you. On the quick, can you please send the contract in [Microsoft] [W]ord format for comments and any markup changes. Thanks and Cheers. Jim." Jim Caton's August 22, 2011 reply email is part of an email chain annexed hereto as Exhibit B.

15.     Samantha Wielkocz replied "I will see if I can have someone at one of our sites re-format it. I only have the PDF version." (See Exhibit B).

16.     On or about August 22, 2011, Samantha Wielkocz emailed Jim Caton and Kate Post a draft of the Concierge / Exterior Security Services Agreement in Microsoft Word format.

17.     By email dated August 31, 2011, Jim Caton emailed Samantha Wielkocz a modified version of the Concierge / Exterior Security Services Agreement, and wrote the following: "Hi Samantha. So here is my first pass at the agreement and we reformatted and cleaned everything up. I believe this is a great starting point as I accepted the majority of contractual verbiage from the prior agreement and added points we need in our agreements. Let me know if I can answer any immediate questions and we can discuss any an all areas we need to make modifications to get a final agreement." A copy of the August 31, 2011 email, without attachment, is annexed hereto as Exhibit C.

18.     As of approximately September 16, 2011, the Concierge / Exterior Security Services Agreement was finalized and ready to be executed by Forrest and Versailles. However, the Concierge / Exterior Security Services Agreement between Forrest and Versailles was not ever executed.

19.     For several months after September 16, 2011, Jim Caton continued to communicate with the Board of the Versailles, but they refused to meet with Forrest to discuss signing the Concierge / Exterior Security Services Agreement.

20.     On or about September 15, 2011, Kate Post resigned from her position at Forrest.

21.     On information and belief, Kate Post left Forrest to join a competing company, and to form a competing company.

22.     On information and belief, Kate Post took from Forrest a database containing trade secrets and proprietary contact information as to clients (the "Forrest Database"), in order to gain advantage over Forrest.

23.     On or about October 12, 2011, Kate Post joined a competitor to Forrest called The A Team Executive Management, Inc. (the "A-Team"). On information and belief, the A-Team is a New York corporation with principal offices in Syosset, New York.

24.     On information and belief, Kate Post is currently "President of The A Team Group of companies. . . . Kate brings her extensive staffing and outsourcing experience and talents to The A Team where she runs Adamas Concierge which provides front and back of the house talent to luxury condos and co-ops, and Aurum Staffing which provides temporary, temp to perm and direct hire talent across a wide range of industries." *See*, excerpt from the website ateamconsulting.com, annexed hereto as Exhibit A.

25.     On information and belief, shortly after Kate Post joined the A-Team, she and the A-Team formed Aurum Staffing, LLC, a New York corporation based in New York County, and/or Adamas Concierge, in order to compete with Forrest. On information and belief, Kate Post is currently using the Forrest Database to communicate with and solicit business from Forrest's clients.

26.     On information and belief, shortly after Kate Post joined the A-Team, the A-Team entered in to a contractual relationship with Versailles in order to provide Versailles with concierge and exterior security services ostensibly similar to those proposed to be provided by Forrest.

27.     On information and belief, Kate Post interfered with the approval and/or execution of the Concierge / Exterior Security Services Agreement between Forrest and Versailles and caused Versailles not to approve and/or execute the agreement.

28.     On information and belief, Kate Post employed dishonest, unfair, or improper means to cause Versailles to terminate its business relationship with Forrest and not to approve and/or execute the Concierge / Exterior Security Services Agreement with Forrest, but instead, to wait for Kate Post to quit her employment with Forrest and become employed by the A-Team, form Aurum Staffing, LLC, and/or form Adamas Concierge, and then to enter into a services contract with the A-Team.

29.     On information and belief, had it not been for Kate Post's dishonest, unfair, or improper actions, Versailles would have approved and/or executed the Concierge / Exterior Security Services Agreement with Forrest and not the A-Team.

### FIRST CAUSE OF ACTION:
### INTENTIONAL INTERFERENCE
### WITH PROSPECTIVE CONTRACTUAL RELATIONSHIP

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as if fully set forth at length herein.

31.     Forrest had a business relationship with Versailles and Wentworth, and the parties negotiated a Concierge / Exterior Security Services Agreement.

32.     On information and belief, Kate Post interfered with the approval and/or execution of the Concierge / Exterior Security Services Agreement between Forrest and Versailles and caused Versailles not to approve and/or execute the agreement.

33.     On information and belief, Kate Post used dishonest, unfair, or improper means to cause Versailles to terminate its business relationship with Forrest and not to approve and/or execute the Concierge / Exterior Security Services Agreement with Forrest, but instead, to wait for Kate Post to quit her employment with Forrest and become employed by the A-Team, form Aurum Staffing, LLC, and/or form Adamas Concierge, and then to enter into a services contract with the A-Team.

34.     On information and belief, but for the improper conduct of Kate Post, Forrest would have entered into the Concierge / Exterior Security Services Agreement with Versailles.

35.     As set forth above, as a consequence of Kate Posts' actions, Plaintiff has sustained damages and Plaintiff's relationship to Versailles has been injured.

36.     By reason of Kate Post's actions the Plaintiff has been damaged in an amount to be determined at the trial of this action but likely in excess of the sum of $1 million.

## SECOND CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY

37.     Plaintiff repeats and realleges paragraphs 1 through 36 as if fully set forth at length herein.

38.     A fiduciary relationship existed between Kate Post and Forrest.

39.     On information and belief, Kate Post was involved in misconduct, including situations of self dealing and/or conflicts of personal interest, and Kate Post injured Forrest, or acted contrary to Forrest's interests, when she interfered with the approval and/or execution of

7

the Concierge / Exterior Security Services Agreement between Forrest and Versailles and caused Versailles not to approve and/or execute the agreement.

40.     On information and belief, Kate Post used dishonest, unfair, or improper means to cause Versailles to terminate its business relationship with Forrest and not to approve and/or execute the Concierge / Exterior Security Services Agreement with Forrest, but instead, to wait for Kate Post to quit her employment with Forrest and become employed by the A-Team, form Aurum Staffing, LLC, and/or form Adamas Concierge, and then to enter into a services contract with the A-Team.

41.     On information and belief, but for the improper conduct of Kate Post, Forrest would have entered into the Concierge / Exterior Security Services Agreement with Versailles

42.     As set forth above, as a direct consequence of Kate Posts' actions, Plaintiff has sustained damages.

43.     By reason of Kate Post's actions the Plaintiff has been damaged in an amount to be determined at the trial of this action but likely in excess of the sum of $1 million.

### THIRD CAUSE OF ACTION:
### MISAPPROPRIATION AND UNFAIR COMPETITION

44.     Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth at length herein.

45.     On or about September 15, 2011, Kate Post resigned from her position at Forrest.

46.     On information and belief, Kate Post left Forrest to join a competing company, and to form a competing company.

47.    On information and belief, Kate Post took the Forrest Database from Forrest, containing trade secrets and proprietary contact information as to clients, in order to gain advantage over Forrest.

48.    On or about October 12, 2011, Kate Post joined a competitor to Forrest called A-Team. On information and belief, the A-Team is a New York corporation with principal offices in Syosset, New York.

49.    On information and belief, Kate Post is currently "President of The A Team Group of companies. . . .   Kate brings her extensive staffing and outsourcing experience and talents to The A Team where she runs Adamas Concierge which provides front and back of the house talent to luxury condos and co-ops, and Aurum Staffing which provides temporary, temp to perm and direct hire talent across a wide range of industries."   See, the website ateamconsulting.com, annexed hereto as Exhibit A.

50.    On information and belief, shortly after Kate Post joined the A-Team, she and the A-Team formed Aurum Staffing, LLC, a New York corporation based in New York County, and/or Adamas Concierge, in order to compete with Forrest.

51.    On information and belief, Kate Post is currently using the Forrest Database to communicate with and solicit business from Forrest's clients.

52.    As set forth above, as a consequence of Kate Posts' actions, Plaintiff has sustained damages.

53.    By reason of Kate Post's actions the Plaintiff has been damaged in an amount to be determined at the trial of this action but likely in excess of the sum of $1 million.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a) on the First Cause of Action against Defendant for intentional interference with prospective contractual relationship in an amount to be determined at the trial of this action but likely in excess of the sum of $1 million;

b) on the Second Cause of Action against Defendant for breach of fiduciary duty in an amount to be determined at the trial of this action but likely in excess of the sum of $1 million;

c) on the Third Cause of Action against Defendant for misappropriation and unfair competition in an amount to be determined at trial of this action but likely in excess of the sum of $1 million;

d) on all causes of action, Plaintiff's reasonable costs, expenses and attorneys' fees; and

e) such other and further relieve as this Court deems just, equitable and proper.

Dated: New York, New York
       February 17, 2012

TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP

By: _____
George F. du Pont, Esq.
*Attorneys for Forrest Solutions, Inc.*
900 Third Avenue
New York, New York 10022
(212) 508-6700

10

# EXHIBIT A

- Home
- Outsourcing
- Adamas
- Aurum
- About
- Our Team
- Contact



What can a part-time CFO
do for you?
See Our
CFO Page

# Meet the A Team Management



**TEDD DRATTELL**
*Email: tdrattell@theateamgroup.com*
*Direct: 646-783-1940*

*Tedd Drattell is founder and CEO of The A Team Group of companies. As the leader of The A Team
Group, he is a key strategist in client relationships and business management and development.
Tedd's take-charge attitude combined with his extensive background in operations and finance, both
in the private and public sectors, helps ensure that The A Team Group of companies provides the best
talent and business recommendations to effectively and successfully meet each client's needs.*

*Prior to founding The A Team Group of companies, Tedd was the President of The A Team Executive Management. Tedd has also had experience as CPA with Big 4 accounting firms, and as a CFO at privately held corporations in the apparel, manufacturing, wholesaling, and importing industries.*

*Actively involved in the business and local communities, Tedd is a founder of N3 and the Long Island Professional Alliance. He is also a board member of both the Entrepreneurs Organization of New York and the New York Staffing Association.*

*Tedd received his accounting degree from the University of Maryland. He and his wife live in Westchester County, New York.*



## KATE POST
***Email: kpost@theateamgroup.com***
***Cell: 646-783-1945***

*Kate Post is President of The A Team Group of companies. Kate has over 34 years of experience in the staffing and outsourcing industry where she began with Dartmouth Consultants as a partner in professional direct hire placement. After 14 years at Dartmouth, Kate joined Forrest Solutions where she had an impressive 20 year career serving as Vice President of both the direct hire and the temporary group's business lines, setting up and running the operations department of outsourcing, and then in developing and growing the outsourcing practice. As the company grew and expanded, Kate became a partner and the COO, effectively running the firm on a daily basis.*

*Kate brings her extensive staffing and outsourcing experience and talents to The A Team where she runs Adamas Concierge which provides front and back of the house talent to luxury condos and co-ops, and Aurum Staffing which provides temporary, temp to perm and direct hire talent across a wide range of industries.*

*Kate is a member, and has served on the board of the New York Staffing Association and the American Staffing Association.*

# EXHIBIT B

| Reply ▼ | Forward | X Delete | Select an Action ▼ | ⊘ Spam | Print |
|---------|---------|----------|--------------------|--------|-------|

| | |
|---|---|
| **From:** | Samantha Wielkocz [swielkocz@wentworthmgt.com] (Contact) |
| **To:** | Jim Caton (Internal); |
| **Cc:** | Kate Post (Internal); <lclarkson@wentworthmgt.com>; |

I will see if I can have someone at one of our sites re-format it.  I only have the PDF version.

On Mon, Aug 22, 2011 at 2:42 PM, Jim Caton <jcaton@thinkfsg.com> wrote:

Hi Samantha

This is excellent news and thank you.  On the quick, can you please send the contract in word format for comments and any markup changes.

Thanks and Cheers

Jim


*A referral is the best compliment I can receive.  If you enjoy working with me please do not keep me a secret.*

## Jim Caton

Chief Chaos Officer, President & Owner

19 West 44th Street, 9th Floor

New York, NY 10036

D. 212.204.0934  C. 917.548.8978  E. jcaton@thinkfsg.com



**Staffing & Onsite Outsourcing (re)IMAGINED**

Visit ThinkFSG.com



-----Original Message-----
**From:** Samantha Wielkocz swielkocz@wentworthmgt.com
**To:** "Kate Post" <kpost@thinkfsg.com>, "Jim Caton" <jcaton@thinkfsg.com>;
**Cc:** "Lauren Clarkson" <lclarkson@wentworthmgt.com>;
**Sent:** Aug 22, 2011 01:06:00 PM
**Subject:** Contract

Hi Kate/Jim,

I hope you had a great weekend and are enjoying today's weather!

The Board has chosen to move forward with FSO.  I have attached a copy of our current Security/Concierge contract drafted by the Corporation's legal counsel.

Please mark it up as you see fit.  As you know, we are still discussing the date of implementation.

We will be in touch this week.

Let me know if you have any questions.

Thanks and we look forward to working with you,


Samantha Wielkocz
Community Manager
Wentworth Property Management Corp.
Managing Agent for:

The Versailles Apartment Corp.
6600 Boulevard East
West New York, NJ 07093
(P) 201-869-4341
(F) 201-869-1723
Email: swielkocz@wentworthmgt.com

Wentworth Group, Inc.
A FirstService Residential Management Company

Managing your property is our business, enhancing your community is our passion.



--

Samantha Wielkocz
Community Manager
Wentworth Property Management Corp.
Managing Agent for:

The Versailles Apartment Corp.
6600 Boulevard East
West New York, NJ 07093
(P) 201-869-4341
(F) 201-869-1723
Email: swielkocz@wentworthmgt.com

Wentworth Group, Inc.
A FirstService Residential Management Company

Managing your property is our business, enhancing your community is our passion.


BHAS:  SL4APP4:82:BULLHORN_LG1412:BULLHORN1141: 171

# EXHIBIT C



✉ | **Sent Messages: Agreement**  <span style="float:right">Back to List</span>

Reply ▾ | Forward | ✖ Delete | ✖ Delete & Next | ⬆▾ | ⬇▾ | Select an Action ▾ | ⊘ Spam | 🖨 Print | ▽

| From: | Jim Caton [jcaton@thinkfsg.com] (Internal) |
|---|---|
| To: | Samantha Wielkocz (Contact); |
| Sent: | Aug 31, 2011 02:10:00 PM |
| Subject: | Agreement |
| Attachments: | 📎 Versaille Agreement 8.31.11.doc (65 Kb) |

Hi Samantha

So here is my first pass at the agreement and we reformatted and cleaned everything up. I believe this is a great starting point as I accepted the majority of contractual verbiage from the prior agreement and added points we need in our agreements.

Let me know if I can answer any immediate questions and we can discuss any and all areas we need to make modifications to get to a final agreement.

Thanks again for all your support and help though this process.

Cheers

Jim

*A referral is the best compliment I can receive. If you enjoy working with me please do not keep me a secret.*

**Jim Caton**
Chief Chaos Officer, President & Owner

19 West 44th Street, 9th Floor
New York, NY 10036
D. 212.204.0934   C. 917.548.8978   E. jcaton@thinkfsg.com

 

**Staffing & Onsite Outsourcing (re)IMAGINED**
Visit ThinkFSG.com



BHAS: SL4APP1:82:BULLHORN_LG1412:BULLHORN1141: 140